# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRANSPORTATION INSURANCE** | : | **CIVIL ACTION** |
| **COMPANY,** *et al.* | : | |
| *Plaintiffs* | : | **NO. 15-4525** |
| | : | |
| **v.** | : | |
| | : | |
| **HEATHLAND HOSPITALITY GROUP,** | : | |
| **LLC,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    NOVEMBER 20, 2017

# MEMORANDUM OPINION

## INTRODUCTION

This is a declaratory judgment action brought by an insurer under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, to determine the rights and duties, if any, owed with respect to insurance coverage for the defense and/or indemnification of its insured in two settled underlying state court actions. Presently, before this Court are cross-motions for summary judgment filed by Plaintiffs Transportation Insurance Company and Continental Casualty Company (collectively, "CNA") and Defendants Heathland Hospitality Group, LLC, Heathland Hospitality Group, LP, and Judith M. Serratore, individually and as Administratrix of the Estate of Frank J. Serratore[1] (collectively "Heathland"), in which each party seeks a declaration in its favor with respect to CNA's obligation to defend and indemnify Heathland. The issues argued in these cross-motions have been fully briefed by the parties and are ripe for disposition. For the

---

[1]       Defendant Judith M. Serratore ("Serratore") was added by way of an amended complaint because Heathland purportedly assigned all of its rights to insurance proceeds at issue to Serratore as part of its settlement of the underlying state court litigation with Heathland. As Heathland's purported assignee, Serratore has essentially stepped into the shoes of Heathland for purposes of this declaratory judgment litigation.

reasons stated herein, CNA's motion is granted, and Heathland's motion is denied. Consequently, summary judgment will be entered in favor of CNA.[2]

## BACKGROUND[3]

This matter originated on August 12, 2015, with CNA's filing of a complaint against Defendants Heathland Hospitality Group, LLC, and Heathland Hospitality Group, LP, seeking declaratory judgment and a determination of the rights and duties, if any, it owed Heathland with respect to insurance coverage for the defense and/or indemnification of Heathland in the two underlying state court actions (collectively, the "State Court Litigation") brought by Judith M. Serratore, individually and as Administratrix of the Estate of Frank J. Serratore. [ECF 1]. On July 18, 2016, CNA filed an amended complaint, [ECF 23], to include, as additional defendants, Judith M. Serratore, individually and as Administratrix of the Estate of Frank Serratore because, purportedly, Heathland had assigned to Serratore all of its rights with respect to any insurance proceeds under the CNA policies at issue.

Heathland sought a defense and indemnification from CNA for the State Court Litigation pursuant to the two insurance policies that CNA had issued to Heathland; *to wit*:

> A commercial general liability policy that Transportation Insurance Company issued to Heathland for the policy period of July 18, 2008 – July 18,

---

[2]     While this Memorandum Opinion adjudicates both of the cross-motions for summary judgment, separate Orders shall be issued with respect to each party's motion.

[3]     In reviewing a motion for summary judgment, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 974 (3d Cir. 2007). Because an insurer's duty to defend an action against its insured is initially determined on the basis of the allegations contained in the underlying complaint against the insured, most of the facts set forth in this section are drawn from the underlying state court complaints filed against Heathland. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-92 (Pa. 2007)). However, some facts in this section are drawn from the parties' respective statements of undisputed facts and responses thereto. While most of the facts material to the parties' cross-motions are undisputed, where disputed, this Court has construed the facts in favor of Heathland.

2009, under policy number 20987915471, and subject to a $1,000,000 per occurrence limit of liability (the "General Liability Policy"). (*See* Pl.'s Statement of Undisputed Facts ("SOF"), ECF 158-2, at ¶1); and

A commercial umbrella policy that Continental Casualty Company issued to Heathland for the policy period of July 18, 2008 – July 18, 2009, under policy number 2097915938, and subject to a $5,000,000 per occurrence limit of liability (the "Umbrella Policy"). (*Id*. at ¶2).

Relevant to our discussion, the General Liability Policy contains a "Liquor Liability" exclusion which provides, in part:

This insurance does not apply to . . . "[b]odily injury" . . . for which any insured may be held liable by reason of:

(1)     Causing or contributing to the intoxication of any person;

(2)     The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

(*Id*. at ¶4).

Similarly, the Umbrella Policy contains a "Liquor Liability Limitation," which provides:

This insurance does not apply to . . . "[b]odily injury" . . . for which an insured may be held liable by reason of:

(1)     Causing or contributing to the intoxication of any person;

(2)     The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

> Unless, and then only to the extent that coverage is provided by "scheduled underlying insurance."[4]

(*Id*. at ¶5).

The General Liability Policy also contains a "Professional Services" exclusion, which provides, in part:

> This insurance does not apply to . . . "[b]odily injury" . . . caused by the rendering or failure to render any professional service . . .

(*Id*. at ¶6).

On November 10, 2010, Judith M. Serratore, individually and as the Administratrix of the Estate of Frank J. Serratore, filed a lawsuit in the Court of Common Pleas of Philadelphia County captioned *Serratore v. Woodbury Country Club*, Nov. Term 2010, Civ. A. No. 1830, (the "PA Serratore Litigation"). (*Id*. at ¶8). Five days later, Ms. Serratore filed an identical civil action in the Superior Court of New Jersey, Gloucester County, captioned *Serratore v. Woodbury Country Club*, GLO-L-1985-10, (the "NJ Serratore Litigation").[5] (*Id*. at ¶9). The complaints in both the PA Serratore Litigation and the NJ Serratore Litigation (collectively, the "State Court Complaints") named as party defendants Heathland, Michael Whittingham ("Whittingham"), and the Woodbury Country Club. (*Id*. at ¶10). Both of the State Court Complaints asserted claims against Heathland for violation of "47 P.S. § 4-492 *et seq*., and other Dram Shop statutes" (Count III) and common law negligence (Count IV). (*Id*. at ¶11). On January 18, 2011, Serratore filed an Amended Complaint in the PA Serratore Litigation, (*id*. at ¶12), which dropped Count III of the PA Complaint. (*Id*. at ¶13).

In the State Court Complaints, Serratore alleged, *inter alia,* the following material facts:

---

[4]    The General Liability Policy is one of the insurance policies defined in the Umbrella Policy as "scheduled underlying insurance."

[5]    According to Heathland, the NJ Serratore Litigation was commenced as a savings action pending the preliminary objections and motions filed in the PA Serratore Litigation.

- that her husband, Frank J. Serratore, was fatally injured on November 16, 2008, when the motor vehicle that he was operating was struck by another vehicle operated by Whittingham, who was intoxicated at the time of the accident. (CNA Ex. 3 at ¶¶10, 11; CNA Ex. 4 at ¶¶10, 11; CNA Ex. 5 at ¶¶11, 12);

- that Whittingham became intoxicated, and was sold and served alcoholic beverages while he was visibly intoxicated by Heathland, at the Woodbury Country Club. (CNA Ex. 3 at ¶¶8, 9; CNA Ex. 4 at ¶¶8, 9; CNA Ex. 5 at ¶¶9, 10);

- that on November 16, 2008, the Woodbury Country Club "was a business establishment that sold alcoholic beverages." (CNA Ex. 3 at ¶6; CNA Ex. 4 at ¶6; CNA Ex. 5 at ¶7);

- that "at all times relevant," Heathland "provided management, training, supervision and other services to and for Woodbury Country Club including food and beverage sales and services." (CNA Ex. 3 at ¶7; CNA Ex. 4 at ¶7; CNA Ex. 5 at ¶8); and

- that Heathland was responsible for Whittingham's intoxication and Frank Serratore's resulting death because: (1) Heathland served or permitted Whittingham to be served alcoholic beverages, including when he was visibly intoxicated; (2) Heathland failed to institute and enforce proper policies and procedures governing the sale and service of alcoholic beverages at the Woodbury Country Club; and/or (3) Heathland failed to properly train and supervise Woodbury Country Club employees with respect to the sale and service of alcoholic beverages. (CNA Ex. 3 at ¶¶27-38; CNA Ex. 4 at ¶¶34-38; CNA Ex. 5 at ¶¶28-38).

Heathland sought a defense and indemnification from CNA for the State Court Litigation. By letter dated November 29, 2010, CNA disclaimed coverage for the State Court Litigation relying on the Liquor Liability exclusions in the CNA policies, (SOF at ¶21), and indicated that CNA "fully reserve and retain all rights that they have under the terms of the policies and under the law," and that CNA's evaluation was "not intended to be exhaustive, and there may be other terms and conditions" that apply. (*Id*. at ¶22).

In December 2010, Heathland retained the law firm of Yost & Tretta, LLP, to represent it with respect to, *inter alia*, CNA's denial of coverage. (*Id*. at ¶25). Through its insurance broker and its legal counsel, Heathland conveyed to CNA in December 2010, January 2011, and April

2011, that Heathland disagreed with CNA's decision to deny coverage for the State Court Litigation. (*Id*. at ¶26). In January and April 2011, Heathland's counsel threatened to sue CNA over CNA's decision to deny coverage. (*Id*. at ¶27). On January 24, 2011, Heathland's counsel sent CNA a copy of Serratore's Amended Complaint in the PA Serratore Litigation and again demanded that CNA assume Heathland's defense and indemnification. (*Id*. at ¶28). On January 25, 2011, CNA reaffirmed its denial of coverage for the State Court Litigation. (*Id*. at ¶29).

Sometime in early July 2011, Heathland and Serratore reached an agreement to settle Serratore's claims against Heathland in the State Court Litigation. (*Id*. at ¶33). Heathland's attorney described the terms of Heathland's agreement with Serratore as follows:

> As you know, Tom [Sheridan] and I have reached an agreement in principle with plaintiff's counsel, Pansini & Mezrow, to protect you from personal exposure and lessen the future litigation costs. We are in the process of working out the details and drafting an agreement. Essentially, plaintiffs have agreed not to pursue any action against you personally over and above Heathland's available insurance coverage with CNA Insurance Company. In exchange for the above, we have agreed on you[r] behalf to fully cooperate with plaintiff's counsel and assign Heathland's rights to plaintiffs to proceed against CNA Insurance Company. As part of the agreement, we would withdraw our Motion to Dismiss the New Jersey action, our Motion to Transfer the Philadelphia action to New Jersey and cooperate fully with plaintiffs against Woodbury. Finally, we would only participate in proceedings that we are required to appear at and/or which we determine would be necessary.

(*Id*.).

Consistent with the agreement, on July 8, 2011, Heathland withdrew its pending motion to dismiss the New Jersey action, and sometime prior to August 31, 2011, withdrew the motion to transfer pending in the PA Serratore Litigation. (*Id*.). On or about April 7, 2015, a written "Confidential Assignment and Covenant of Cooperation" by and between Serratore, Heathland, Michael Pansini, Esq., Robert Wurtz, Richard Yost, Esq., and Thomas Sheridan, Esq., was fully

executed. (*Id*. at ¶34). On or about the same day, the same parties executed a "Stipulated Judgment." (*Id*.).

Under the settlement agreement between Heathland and Serratore, Heathland purported to assign its rights against CNA to Serratore. (*Id*. at ¶35). As part of the settlement, Heathland admitted liability to Serratore. (*Id*. at ¶36). Counsel for Heathland, Attorney Yost, testified during a deposition that a jury could find Heathland liable to Serratore because Heathland managed the Woodbury Country Club. (*Id*.)

On or about July 21, 2015, CNA first learned that Serratore and Heathland had settled the State Court Litigation when Heathland sent CNA a notice of a "fairness" hearing to be held on August 10, 2015, in the Philadelphia Court of Common Pleas. (*Id*. at ¶39). As scheduled, the "fairness" hearing concerning the Heathland-Serratore settlement was held. (*Id*. at ¶40). During the oral argument, Steven Mezrow, counsel for Serratore, advised the court that while Heathland had requested the hearing, in reality Serratore and Heathland were making a "joint motion" for approval of the terms of the settlement. (*Id*. at ¶41). In support of the joint motion, Mezrow argued, without objection by Heathland, *inter alia,* that:

> Heathland Hospitality Group . . . is a company that provides management. It provides training. It provides oversight of bars, restaurants, and the financial aspect of the bar and food aspect of different entities.
>
> Heathland Hospitality entered into a partnership agreement with Defendant Woodbury Country Club to run their bars, to train their bartenders, and to manage oversight of the bar and the operation of the bar. What brings us here today is a very tragic incident that occurred on November 16th, 2008. A defendant by the name of Michael Whittingham was celebrating his birthday. . . . He got to the point where unfortunately he was unable to make cognizant decisions himself, and sadly, the bartender who was managed by Heathland and employed by Woodbury continued to serve alcohol.

(*Id*. at ¶42).  On August 10, 2015, a judge of the Philadelphia Court of Common Pleas entered an Order approving the parties' stipulated judgment.  (Heathland Ex. A).  CNA commenced this federal action two days later. [ECF 1].

## LEGAL STANDARD

As stated, in the parties' respective cross-motions for summary judgment, the parties each seek judgment and a declaration in their favor with respect to CNA's duty to defend and/or indemnify Heathland in the underlying State Court Litigation.

Federal Rule of Civil Procedure ("Rule") 56 governs the summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).[6]

---

[6]   Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id*. at 322.  After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon Intern., Inc.,* 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Anderson v. Franklin Institute*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations omitted).

Here, though the parties' underlying cross-motions are for summary judgment with respect to their initial dispute over CNA's duty to defend, they each rely upon their respective legal interpretations of the underlying insurance policies and the allegations contained in the underlying State Court Complaints, rather than on an analysis of facts or evidence. As set forth more fully below, whether an insurer owes a duty to defend an insured in litigation brought against the insured is initially determined from a review of the allegations contained in the underlying complaint against the insured and the language of the insurance policy at issue. *See Mehlman*, 589 F.3d at 110 (citing *Donegal*, 938 A.2d at 290)). As such, neither the parties' respective arguments with respect to the duty to defend nor this Court's opinion with respect to the duty to defend is reliant upon any disputed facts or evidence.

**DISCUSSION**

As noted, in its motion for summary judgment, CNA seeks a declaration that it owes no duty to defend and/or indemnify Heathland in the State Court Litigation. Heathland, on the other hand, in its cross-motion for summary judgment, seeks a declaration that CNA does owe it a duty

in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*.

to defend and indemnify in the State Court Litigation. Because the cross-motions for summary judgment concern identical issues and there are no disputes of material fact, this Court will address and adjudicate both motions concurrently.

Under Pennsylvania law,[7] an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). However, "there is no duty to indemnify if there is no duty to defend." *Id.* To determine whether CNA owes a duty to defend Heathland in the underlying State Court Litigation, the allegations in the State Court Complaints and the language of the insurance policies issued to Heathland must be examined and compared. That is:

> an insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings . . . . In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay [the] resulting judgment . . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

*Donegal*, 938 A.2d at 290 (citation omitted).

Thus, to determine whether a claim is covered by an insurance policy, the court must compare the four corners of the policy to the four corners of the underlying complaint. *Id.* If the underlying state court complaint alleges an injury "which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super.

---

[7] This matter comes before this Court on diversity jurisdiction, and all parties agree that Pennsylvania substantive law governs the action. Accordingly, this Court will treat the decisions of the Pennsylvania Supreme Court as binding precedent and will treat the decisions of the Pennsylvania Superior Court as persuasive precedent. *State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 108 n. 2 (3d Cir. 2009) (citing *Jewelcor Inc. v. Karfunkel,* 517 F.3d 672, 676 n. 4 (3d Cir. 2008)).

Ct. 1986). "To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The mere allegation of "negligence" in a complaint is insufficient to trigger an insurer's duty to defend. *See id.* ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the *cause of action* pled, [claimants] run afoul of our case law, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.") (emphasis in original). The duty to defend is properly denied where the allegations fall within a clear and unambiguous exclusion of coverage. *Harrison v. Aetna Life & Casualty*, 473 A.2d 636, 636 (Pa. Super. Ct. 1984).

Here, CNA relies on the Liquor Liability exclusion in the policies to argue that it did not owe a duty to defend Heathland in the State Court Litigation because the facts alleged and the claims pled in the State Court Complaints fall within said exclusion. Heathland disagrees and argues that at least some of the claims and/or theories of liability alleged in the underlying State Court Complaints fall outside of the Liquor Liability exclusions and within the policy's scope of coverage.

In addressing insurance disputes under Pennsylvania law, the Court of Appeals for the Third Circuit outlined the approach that Pennsylvania district courts should take when reviewing insurance contract provisions and exclusions such as those at issue here as follows:

> It is the function of the court to interpret insurance contracts under Pennsylvania law. The court's primary consideration in performing this function is to ascertain the intent of the parties as manifested by the language of the written instrument. The policy

must be read as a whole and construed in accordance with the plain meaning of terms. Words of common usage must be construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms. Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Furthermore, if possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control. Pennsylvania courts have applied this rule liberally.

*Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320-21 (3d Cir. 2011) (citations and quotations omitted); *see also Donegal,* 938 A.2d at 290–91; *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Where "an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

As noted, the parties' coverage dispute has centered primarily on the insurance policies' Liquor Liability exclusions. The policy provides that the exclusion applies "only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." (CNA Ex. 1 at CNA00211-12). Specifically, the Liquor Liability exclusion reads as follows:

**Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

(*Id*.).

Heathland appears to argue that the Liquor Liability exclusion is ambiguous and that this Court must, therefore, give it any reasonable interpretation put forth by Heathland. This Court disagrees. As outlined above, determining whether a provision of an insurance policy is ambiguous is a task for the court. *Murray*, 658 F.3d at 320-21. In undertaking the interpretation of an insurance policy, this Court must read the policy as a whole and construe it according to the plain meaning of its terms. *Id.; see also Bateman v. Motorists mutual Ins. Co*., 590 A.2d 281, 283 (Pa. 1991). An insurance policy provision is ambiguous only if it is "reasonably susceptible to more than one interpretation." *Murray*, 658 F.3d at 321 (citations omitted).

Here, reading the relevant "*in the business of*" language in the context of the entire policy and the exclusion, it is clear that the provision is intended to distinguish an insured who occasionally serves alcohol from an insured who is involved with the service of alcohol with such regularity that the insured represents a significantly greater insurance risk. Indeed, numerous courts, including the Pennsylvania Superior Court, have reviewed identical or nearly identical liquor liability provisions and found them to not be ambiguous. *See, e.g., U.S. Fidelity and Guar. v. Griggs,* 491 A.2d 267, 291 (Pa. Super. Ct. 1985) (holding similar "in the business of" language contained in a liquor liability exclusion to not be ambiguous); *Harleysville Preferred Ins. Co. v. Executive Banquet and Conference Ctr.*, 2016 WL 6879524, at *3 (Del. Super. Ct. Nov. 21, 2016) (same); *Peerless Ins. Co. v. Disla*, 990 F. Supp. 261, 263 (D. Conn. 1998) (same); *Nichols v. Westfield Ins. Co.*, 509 S.E.2d 149, 150-51 (Ga. App. Ct. 1998)

(collecting cases). This Court is guided by and agrees with these courts, and finds that the Liquor Liability exclusion and, in particular, the "in the business of" language, is not ambiguous.

Having made this determination of unambiguity, consistent with the principles outlined above, this Court must now compare the allegations contained within the four corners of the State Court Complaints to the language of the insurance policies to determine whether the underlying allegations allege a claim that could potentially fall within the scope of the insurance coverage. *Donegal*, 938 A.2d at 290. In the State Court Litigation, Serratore alleged the following key facts:

- the Woodbury Country Club "was a business establishment that sold alcoholic beverages." (CNA Ex. 3 at ¶6);

- Heathland "provided management, training, supervision and other services to and for Woodbury Country Club including food and beverage sales and services." (*Id*. at ¶7);

- Heathland "by their authorized agents and servants at Woodbury Country Club, sold or gave alcoholic beverages to Defendant Whittingham who consumed the beverages on the premises of Defendant Woodbury Country Club." (*Id*. at ¶8);

- "Defendant Whittingham became intoxicated and was served alcohol while visible intoxicated by Defendants Woodbury Country Club, and/or Heathland Hospitality, their agents or servants." (*Id*. at ¶9);

- "At all times relevant hereto, all Defendants [including Heathland] were acting through their respective agents (actual, apparent or ostensible), servants and/or employees and some or all of the Defendants [including Heathland] may have been agents, servants and employees of the other Defendants." (*Id*. at ¶12); and,

- "Heathland Hospitality, individually and by and through their agents, servants, workmen, and/or employees, negligently, carelessly and recklessly served and continued to serve and/or permitted alcoholic beverages to be served to Defendant Whittingham and/or recklessly failed to manage the service of alcoholic beverages to club members and patrons, including Defendant Whittingham, when they knew or had reason to know that alcoholic beverages were being served to visibly intoxicated patrons with said Defendants knowing that serving visibly

intoxicated patrons created danger and foreseeable harm to such patrons and others." (CNA Ex. 4 at ¶34).

These allegations clearly allege that Heathland, through its own agents and/or as an agent of the Woodbury Country Club, managed the sale of alcoholic beverages at the Woodbury Country Club, and sold or gave alcoholic beverages to Whittingham, who was alleged to be visibly intoxicated at the time and who later caused the death of Frank Serratore.

The parties, however, dispute whether these allegations necessarily trigger the Liquor Liability exclusion. Heathland argues that they do not because the complaints do not contain any allegation that Heathland was actually "in the business of" selling or furnishing alcoholic beverages. In support of its argument, Heathland contends that the State Court Complaints merely allege that Heathland "managed" the Woodbury Country Club and its liquor business and that an entity that merely manages a liquor business is not necessarily "in the business of" selling, serving, and/or furnishing alcoholic beverages. In considering the common usage of the word "manage," however, this Court disagrees. Common dictionary definitions of the word, "manage", include the following:

- "to direct or carry on business or affairs." Merriam-Webster Dictionary;

- "to control and direct . . . to direct or carry on business or affairs." Webster's Third New International Dictionary;

- "to control and direct, to administer, to take charge of . . . to carry on the concerns of a business or establishment." Black's Law Dictionary;

- "to control or organize someone or something, esp. a business." Cambridge Dictionary;

- "be in charge of (a business, organization, or undertaking); run." English Oxford Dictionary; and

- "if you manage an organization, business, or system, or the people who work in it, you are responsible for controlling them." Collins Dictionary.

Under these common dictionary definitions and usages of the word "manage," one who manages a business directs, controls and/or is in charge of and/or responsible for that business. Thus, as the entity alleged to had been "managing" the Woodbury Country Club's bar services, Heathland was alleged to have directed, controlled and been in charge of and responsible for the Woodbury Country Club's bar business. Accordingly, this Court finds such assertions clearly allege that Heathland was in the business of selling, serving or furnishing alcohol.

In addition, Heathland concedes that the Woodbury Country Club was alleged to be in the business of selling and/or serving alcohol at the time Whittingham allegedly was served alcohol. (*See* Heathland Briefs, ECF 157-1 at pp. 15-16 and ECF 161 at p. 32). Indeed, the State Court Complaints allege that the Woodbury Country Club "was a business establishment that sold alcoholic beverages." (CNA Ex. 3 at ¶6; CNA Ex. 5 at ¶7). The State Court Complaints also clearly allege that Heathland was acting as the Woodbury Country Club's agent. (CNA Ex. 3 at ¶12; CNA Ex. 5 at ¶13). Under both the common and legal definitions of agent and agency principles, therefore, Heathland was alleged to have acted on behalf of the Woodbury Country Club when Heathland furnished alcohol to Whittingham, and when it continued to serve him alcohol when he was visibly intoxicated. *See Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323 (Pa. Super. Ct. 2015) ("Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so."). This Court finds that, in so pleading, Serratore alleged that Heathland was in the business of selling, serving or furnishing alcoholic beverages at the Woodbury Country Club. As such, the insurance policies' Liquor Liability exclusions apply, and CNA owed no duty to defend Heathland in the State Court Litigation.

As noted, Heathland also argues that CNA owed it a duty to defend because not all of the allegations contained in the State Court Complaints necessarily fall within the scope of the Liquor Liability exclusions. Heathland posits a number of hypothetical situations where it might be found liable in the State Court Litigation without a factfinder concluding that it was in the business of selling, serving or furnishing alcohol. For example, Heathland points to the allegations that Heathland was negligent for permitting Whittingham to leave the Woodbury Country Club with his car keys knowing that he was showing clear signs of intoxication and for failing to warn Whittingham that he was visibly intoxicated, [*see* ECF 157-1 at p. 4 n.5], and argues that a jury could have found it liable based on these allegations without necessarily finding that it was in the business of selling, serving or furnishing alcoholic beverages.[8]

A majority of courts that have considered this issue have held that "when considering whether a liquor liability exclusion applies to a claim of negligence that does not specifically refer to providing alcohol, the reviewing court must consider whether the claims of negligence are 'inextricably intertwined with the negligent provision of alcohol;' where the claims of negligence are inextricably intertwined with – or not sufficiently independent of – the provision of alcohol, the liquor liability exclusion will bar coverage." *State Auto. Mut. Ins.v. Lucchesi*, 2012 WL 2009355, at *5 (M.D. Pa. June 5, 2012) (collecting cases), *aff'd*, 563 F. App'x 186 (3d Cir. 2014); *see also Those Certain Underwriters & Insurers Subscribing to Lloyd's Policy No. SP93/7131 v. 6091 Frankford Ave., Inc.*, 1997 WL 22407, at *3 (E.D. Pa. Jan. 21, 1997) (rejecting insured's argument that liquor liability exclusion should only apply to Dram Shop Act claims, and holding common law negligence claims were barred as well); *Hamburg v. 14,00*

---

[8]     This Court notes that Heathland appears to have taken a contrary position with respect to the scope of the negligence claims in its motion to dismiss the NJ State Court Complaint. In particular, Heathland argued there that "[a]ll allegations against Heathland are based upon the negligent service of alcohol." (CNA Ex. 27 at p. p.3).

*Siblings, Inc.*, 1998 WL 559783, at *2 (E.D. Pa. Aug. 28, 1998) (holding claim of "general negligence" was barred by liquor liability exclusion). In addressing this issue in *Lucchesi*, the district court relied on the "overwhelming weight of authority" to hold that "when considering whether a liquor liability exclusion applies to a claim of negligence that does not specifically refer to the provision of alcohol, the reviewing court must consider whether the claims of negligence are 'inextricably intertwined with the negligent provision of alcohol.'" *Lucchesi*, 2012 WL 2009355, at *5 (M.D. Pa. June 5, 2012) (citing cases), *aff'd*, 563 F. App'x 186 (3d Cir. 2014).

In *Lucchesi*, a patron of the insured, Champs Sports Bar and Grill ("Champs"), was severely injured when he was struck by a car shortly after leaving the establishment. 2012 WL 2009355, at *1. Champs argued that the liquor liability exclusion did not bar coverage because the injured patron alleged that Champs had been negligent "in permitting him to leave the premises while visibly intoxicated, failing to administer programs designed to identify and assist intoxicated patrons, and failing to ensure that he left the establishment with a competent individual." *Id*. at *1. Champs argued that these negligence allegations that were not premised on the sale or furnishing of alcohol could lead to liability premised upon allegations that fell outside of the liquor liability exclusion. *Id*. at *4-5. Rejecting this argument, the district court explained that under Champs' theory, "any commercial enterprise – even an enterprise that does not engage in the sale or distribution of alcohol – would have a legal duty, upon seeing an intoxicated person enter, to prevent him from leaving the establishment while intoxicated. The Court can find no support in law for the finding of a duty in such circumstances, and Defendants can cite none." *Id*. at *5-6. The only basis for concluding that the insured owed a duty to the patron "is as a result of having furnished him with alcohol while he was visibly intoxicated." *Id*.

at *6.  As such, the court concluded that the plaintiff's claims of negligence were "inextricably intertwined with his claims based on the furnishing of alcohol, and they fall under the clear and unambiguous terms of the liquor liability exclusion."  *Id*.  In addition, the district court noted that its holding was "in accord with the nearly unanimous consensus of state and federal courts that have considered whether liquor liability exclusions apply to similarly framed claims of negligence."  *Id*. (citing cases).

This Court finds the holding and reasoning in *Lucchesi*, (affirmed by a non-precedential opinion of the Third Circuit), persuasive.  As in *Lucchesi*, all of Heathland's allegedly negligent acts and/or omissions are inextricably intertwined with the duty of the licensee (the Woodbury Country Club) and its manager and agent (Heathland) not to serve, sell or furnish alcoholic beverages to Whittingham when he was visibly intoxicated.  According to Serratore's allegations, Heathland encouraged the sale of alcoholic beverages (CNA Ex. 3 at ¶35(l); CNA Ex. 4, at ¶35(l), (y); CNA Ex. 5 at ¶35(l)), and failed to manage the sale and service appropriately by implementing proper policies and procedures (CNA Ex. 3 at ¶35(f)-(l), (o)-(q), (t)-(w); CNA Ex. 4 at ¶35(f)-(l), (n)-(q), (t)-(x); CNA Ex. 5 at ¶35(f)-(l), (o)-(q), (t)-(w)), in addition to allegedly serving Whittingham when he was visibly intoxicated and, having done so, then allowing him to drive (CNA Ex. 3 at ¶35(a)-(e), (m)-(n), (r)-(s); CNA Ex. 4 at ¶35(a)-(e), (m), (r)-(s); CNA Ex. 5 at ¶35 (a)-(e), (m)-(n), (r)-(s)).  The only basis for the claims against Heathland, however, is its alleged service or furnishing of alcohol.  *Cf*., *Lucchesi*, 2012 WL 2009355, at *5-6; *Hamburg*, 1998 WL 559783, at *2 n.2 (holding that liquor liability exclusion barred acts pleaded as negligent hiring of employees and negligently controlling the business as "[a]n inseparable causal factor remains the serving of liquor"); *Those Certain Underwriters*, 1997 WL 22407, at *3 (holding that claims of negligently allowing inebriated patron to leave and

operate motor vehicle were barred because "if the insureds had not served alcohol to Holsworth, they would have no possible obligation to him or to third parties foreseeably injured by him.").[9] Here, as in *Lucchesi* and the cases cited therein, the sole basis for liability against Heathland in the State Court Litigation is the provision of alcohol to Whittingham when he was visibly intoxicated. Such conduct is expressly excluded from coverage by the Liquor Liability exclusions of the insurance policies.

After a careful review of the underlying State Court Complaints and the law governing liquor liability exclusions in insurance policies, this Court finds that the claims asserted within the four corners of the State Court Complaints fall squarely within the scope of the Liquor Liability exclusions. Although the State Court Complaints include claims that do not explicitly reference the provision of alcohol, the factual allegations demonstrate that all of the claims in the complaints against Heathland arise from the furnishing of alcohol to Whittingham. As such, all of the claims of negligence are inextricably intertwined with Serratore's allegations of liability arising from the service of alcohol. These claims, therefore, fall within the Liquor Liability exclusions. Accordingly, CNA does not have a duty to defend or indemnify Heathland for the State Court Litigation. [10]

---

[9]     Here, like the insured in *Lucchesi*, Heathland has provided no support in Pennsylvania or New Jersey law for the theory that "any commercial enterprise – even an enterprise that does not engage in the sale or distribution of alcohol – would have a legal duty, upon seeing an intoxicated person enter, to prevent him from leaving the establishment while intoxicated." *Lucchesi*, 2012 WL 2009355, at *5-6 (M.D. Pa. June 5, 2012), *aff'd*, 563 F. App'x 186 (3d Cir. 2014). Thus, Heathland could only be held liable in the State Court Litigation if it was found to have participated in the actual sale or furnishing of alcohol.

[10]     Though not relevant to this Court's determination that CNA's duty to defend Heathland was not triggered by the allegations in the underlying State Court Complaints because the claims as alleged fell within the policies' Liquor Liability exclusion, this Court finds that the indisputable evidence revealed in discovery and presented by CNA also demonstrates that Heathland was in the business of selling, serving and/or furnishing alcoholic beverages both at the Woodbury Country Club and other private country clubs at the time of the underling incident. In particular, this evidence shows that the Woodbury Country Club,

**CONCLUSION**

For the reasons stated herein, CNA's motion for summary judgment is granted, Heathland's motion for summary judgment is denied, and judgment is entered in favor of CNA.[11] Two Orders consistent with this Memorandum Opinion follow.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

which indisputably sold and served alcohol as part of its business, hired Heathland "as a management company to place a manager on the property to take care of the clubhouse operations and business, including their office, financials, and oversee food and beverage." (CNA Ex. 18, Wurtz Dep. Tr. at 232:6-11); (*see also* CNA Ex. 20, Kocinski Dep. Tr. at 49:13-50:13; 54:13-58:21; 108:22-23) (testifying that Heathland was hired to run the entire club and oversee all employees, through a Heathland-placed manager, including those directly tasked with selling, serving and/or furnishing alcohol to patrons). Further, the written job description for the Heathland-placed manager provided the following as the manager's "Scope and General Purpose: To supervise and control all catering outlets in the club to the required standards, within agreed budgetary limits and parameters of the law, ***particularly liquor law***." (CNA Ex. 42) (emphasis added). Also, at the same time Heathland was providing management services to the Woodbury Country Club, it was providing the same or similar management services to other private clubs where alcoholic beverages were sold, served and/or furnished. (*See* CNA Ex. 18, Wurtz Dep. Tr. at 382:20-383:11; 128:3-7; CNA Exs. 23 and 24 at Nos. 4, 7, 10, 13, 19, 22, 25, 31). This undisputed evidence establishes that managing the selling, serving and furnishing of alcoholic beverages for its private club clients, including the Woodbury Country Club, was a regular and integral part of Heathland's business.

In its motion for summary judgment, CNA also argues that it had no duty to defend and/or indemnify Heathland because the claims asserted in the underlying State Court Litigation all fell within the General Liability Policy's Professional Services exclusion and the Umbrella Policy's Directors and Officers exclusion. Because this Court has concluded that the claims asserted in the underlying State Court Litigation fall within the Liquor Liability exclusion, it need not determine whether any other exclusions apply. Notwithstanding, this Court finds that the undisputed evidence also shows that the claims ultimately settled by Heathland, and for which it seeks indemnification, were premised on Serratore's allegations of Heathland's negligent performance of professional services (in particular, management services) which Heathland contracted to provide to the Woodbury Country Club. (*See* CNA Ex. 32). Indeed, Heathland's contracted-for professional services were emphasized by Serratore's counsel during the fairness hearing. (*See* CNA Ex. 37 at 6:6-18). As such, the Serratore claims that were ultimately settled were also excluded by the Professional Services exclusion.

Finally, CNA also seeks summary judgment on Heathland's counterclaims for declaratory judgment, arguing that they are barred by applicable statutes of limitation. In its counterclaims, Heathland merely seeks the opposite declarations sought by CNA with respect to CNA's duty to defend and indemnify. Because this Court has concluded that CNA is entitled to summary judgment in its favor on its own claims for declaratory judgment with respect to its duty to defend and indemnify, this Court need not address CNA's arguments that Heathland's counterclaims are barred by the statute of limitations.

[11] CNA has also asserted a breach of contract claim (Count Two) premised on an alleged improper assignment to Serratore of Heathland's rights against CNA under the policies at issue. While neither party addressed this claim in their respective motions for summary judgment, in light of this Court's disposition of Count One, the breach of contract claim is dismissed as moot.